Stacy KNIGHT, Plaintiff,

v.

John P. KEANE, Superintendent, Sing Sing Correctional Facility; Sergeant H. Kerrigan, Sing Sing Correctional Facility; Thomas Dixon, Lieutenant, Attica Correctional Facility; Donald Selsky, Director of Special Housing Unit and Inmate Disciplinary Program, Defendants.

No. 99 CIV. 3955 RMBKNF.

United States District Court, S.D. New York.

Oct. 16, 2002.

Stacy Knight (Pro Se), Wallkill, for plaintiff.

Ken·Jones, Assistant Attorney General, New York, for defendant.

## ORDER

BERMAN, District Judge.

### I. Background

On or about June 1, 1999, *pro se* Plaintiff Stacy Knight ("Plaintiff"), incarcerated at Shawangunk Correctional Facility, commenced this action pursuant to 42 U.S.C. §§ 1983 and 1985 against Defendants John P. Keane ("Keane"), Superintendent, Sing Sing Correctional Facility, Sergeant H. Kerrigan ("Kerrigan"), Sing Sing Correctional Facility, Thomas Dixon ("Dixon"), Lieutenant, Attica Correctional Facility, and Donald Selsky ("Selksy"), Director of Special Housing Unit and Inmate Disciplinary Program, Department of Corrections ("DOCS") (collectively, "Defendants"). Plaintiff alleged that: (1) Defendants violated his Eighth and Fourteenth Amendment rights by confining him to "keeplock" for 365 days following an October 1996 disciplinary hearing;[1] (2) Defendants violated his First Amendment right to receive and send mail by confiscating his personal correspondence; and (2) Defendants Kerrigan and Dixon conspired to violate his civil rights. Complaint at IV, Statement of Claim, ¶¶ 1–10, and V.[2] Plaintiff's claims relate to the seizure of a letter he wrote to his mother dated October 13, 1996, during a facility-wide lockdown at Sing Sing Correctional Facility ("Sing Sing") following the stabbing of three inmates in October of 1996.[3] Complaint at IV, Statement of Claim ¶ 1–5. The letter was relied upon at the Oc-

---

1. Keeplock is "a form of administrative segregation in which an inmate is confined to his cell and denied participation in normal prison activities, as well as telephone and commissary privileges." *Wright v. Coughlin*, 132 F.3d 133, 135 (2d Cir.1998).

2. The Court has numbered the paragraphs of Plaintiff's Statement of Claim.

3. The letter is annexed to the Complaint and states, among other things, that prior to the

lockdown, "a friend of mine got stabbed in front of me by some Puerto Ricans (Latin Kings), and I cut three of them." In resolving a motion to dismiss, "a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (citation and internal quotations omitted).

tober 1996 disciplinary hearing, following which Plaintiff was found guilty of assaulting another inmate. *Id.* ¶¶ 1, 2, 4, 9.

Prior to bringing this action, Plaintiff appealed the disciplinary hearing determination to Selsky, who affirmed the decision. *Id.* ¶ 10. Plaintiff thereafter commenced an Article 78 proceeding in New York State Supreme Court. *Id.* The matter was "transferred" to the Appellate Division, Fourth Department, which on November 13, 1998, vacated the disciplinary determination because the "record in the instant case [did] not contain a written authorization allowing prison officials to open and read petitioner's outgoing correspondence. Under those circumstances, we conclude that the evidence utilized at the hearing was seized in contravention of respondent's rules and regulations." *Knight v. Goord,* 255 A.D.2d 930, 681 N.Y.S.2d 719, 720 (4th Dep't 1998).

On or about February 28, 2000, Defendants moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Def.Mem."), arguing that: (1) Plaintiff was not deprived of his constitutional rights under the Eighth and Fourteenth Amendments because his keeplock confinement was not an "atypical and significant hardship," Def. Mem. at 6; (2) Plaintiff was not deprived of his First Amendment rights because interception of Plaintiff's mail occurred during a facility-wide mail watch which was reasonably related to the "legitimate penological interest of restoring order and safety," *id.* at 9, and (3) Defendants are protected by qualified immunity. *Id.* at 12. Plaintiff submitted an opposition to Defendants' motion entitled "Memorandum of Law in Support of Plaintiff's Motion to Grant Complaint and Proceed for Summary Judgment," dated February 4, 2000 ("Pl.Mot."). Defendants' filed a reply memorandum on March 27, 2000. Defendants' Reply Memorandum of Law in Support of Their Fed. R.Civ. P. 12(b)(6) Motion to Dismiss, dated March 24, 2000.

On or about June 28, 2002, United States Magistrate Judge Kevin Nathaniel Fox, to whom this matter had been referred, issued a report and recommendation ("Report") recommending that Defendants' motion to dismiss be denied with respect to Plaintiff's Fourteenth Amendment claim against Defendants Kerrigan, Dixon and Selsky because, "[i]n the absence of [a more detailed factual record] ... it does not appear beyond doubt that plaintiff can prove no set of facts in support of his procedural due process claim." *Id.* at 9. The Report also recommends against dismissal of Plaintiff's Eighth Amendment claim as to these (three) Defendants because it "does not appear that plaintiff can prove no set of facts in support of his allegation that defendants have violated his constitutional right to be free from cruel and unusual punishment." *Id.* at 10. Magistrate Fox also recommends Plaintiff's First Amendment claim go forward where "the record evidence is insufficient to establish that inspection of plaintiff's mail was based on good cause." *Id.* at 11. The Report further recommends that "defendants' motion to dismiss ... be granted with respect to plaintiff's § 1985 claim against [D]efendants Kerrigan and Dixon," *id.* at 17, absent "specific facts in support of a conspiracy on the part of the defendants." *Id.* at 14 n. 6. With respect to Defendant Keane, the Report found Plaintiff's "broad and conclusory allegation" that Keane "was negligent in supervising subordinates who committed wrongful acts" was "insufficient to state a claim under § 1983." *Id.* at 14.

The Report notifies the parties that "[p]ursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10)

days from service of this Report to file written objections." *Id.* at 17. On July 26, 2002, Defendants filed objections ("Objections") to the Report. Plaintiff has not submitted a response or any objections. **For the reasons stated below, the Report is adopted in part and rejected in part.[4]**

## II. Standard of Review

A district court evaluating a Magistrate's report may adopt those portions of the report to which no "specific, written objection" is made, as long as those sections are not clearly erroneous. Fed. R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y.1997). "Where a party makes a 'specific written objection' within '[ten] days after being served with a copy of the [magistrate judge's] recommended disposition,' however, the district court is required to make a de novo determination regarding those parts of the report." *Cespedes v. Coughlin*, 956 F.Supp. 454, 463 (S.D.N.Y.1997) (quoting *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate. *See DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood*, 679 F.Supp. 372, 374 (S.D.N.Y.1988).

A court may dismiss an action pursuant to Rule 12(b)(6), only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief.' " *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court must "view the complaint in the light most favorable to plaintiff and accept all allegations in the complaint as true." *Jackson v. Goord*, 1997 WL 728243, at *1 (S.D.N.Y. Nov.20, 1997). **Where, as here, a party is proceeding *pro se*, the court has an obligation to "read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."** *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (emphasis added); *see also Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

## III. Analysis

The facts as set forth in the Report are incorporated by reference unless otherwise noted.

The Court has conducted a *de novo* review of the Report, the record, applicable legal authorities, along with the Objections. As to the portions of the Report to which no objections have been made, the Court concludes that the Report is not facially erroneous or contrary to law. *See Pizarro v. Bartlett*, 776 F.Supp. 815, 817 (S.D.N.Y.1991) ("the Court is permitted to adopt those sections of the report to which no objections have been made and which are not facially erroneous").

The Objections are addressed below in the order presented by Defendants. *See* Objections at 5–16.

### A. First Amendment Claim

Defendants object to the Report's conclusion that "there is not 'a sufficiently detailed record' to justify dismissing plaintiff's First Amendment claim." Objections at 5. Defendants argue, among other things, that the Report "fails to acknowledge the 'heightened deference' to which the defendants' security related determinations are entitled."[5] *Id.* at 5.

---

4. **The Court is not here ruling on the ultimate merits of Plaintiff's claims.**

5. Defendants further contend that "the Weapons Charge itself provided good cause for the

■ The Magistrate acknowledges that "the prevention of ongoing criminal activity and the preservation of prison security and discipline constitute legitimate penological interests." *Id.* at 12. *See also Giano v. Senkowski*, 54 F.3d 1050, 1055 (2d Cir.1995) ("[p]rison officials must be given latitude to anticipate the probable consequences of certain speech, and must be allowed to take reasonable steps to forestall violence"). As Magistrate Fox also noted, "[p]rison inmates have a First Amendment right to the free flow of their mail, both incoming and outgoing," Report at 10, and that "under the circumstances, the inspection of plaintiff's outgoing mail cannot be said to have been reasonably related to those interests."[6] *Id.* at 12.

■ "Prison restrictions on inmate mail must be reasonably related to prison interests in security and order." *France v. Coughlin*, 1987 WL 10724, at *2 (S.D.N.Y. May 4, 1987); *Duamutef v. Hollins*, 297 F.3d 108, 112 (2d Cir.2002) ("restrictions that implicate prisoners' constitutional rights may be upheld if they are 'reasonably related to legitimate penological interests'") (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). "[T]he implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials." *Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). "Therefore, the penological interests for interference with outgoing mail must be more than just the general security interest." *Cancel v. Goord*, 2001 WL 303713, at *5 (S.D.N.Y. March 29, 2001).

Magistrate Fox determined that "the record evidence is insufficient to establish that inspection of plaintiff's mail was based on good cause," Report at 11, where "there is nothing in the record to indicate that defendants possessed an independent source of information concerning plaintiff's alleged participation in the events that gave rise to the mail watch ... The letter from plaintiff cannot have been suspect based upon information contained only in the letter itself." *Id.* The Court believes that, at this early stage, Plaintiff's First Amendment claim should not be dismissed. *See* Report at 12.

Defendant's argument that the Report's conclusion "cannot be reconciled with the holding and reasoning" of *Duamutef v. Hollins* is misplaced. Objections at 2. In *Duamutef*, 297 F.3d 108, the court ruled upon an application for summary judgment that "a rational jury" could not find that the watch on plaintiff's mail was not reasonably related to legitimate penological interests. *Id.* at 113 ("the actions taken by defendants were measured, limited to 30 days, and calculated to ensure that the apparently provocative materials were not

mail watch even if no direct link could be made between the weapon found and any gang related assaults," *id.* at 8, and object to the Report on the grounds that it "interprets the 'good cause' requirement too narrowly." *Id.* at 7. The letter was seized and opened while Plaintiff was held in Sing Sing's Special Housing Unit for a "contemporaneous weapons violation." *Id.* at 8.

6. Department of Corrections ("DOCS") regulation section 720.3(e) provides that an inmate's outgoing correspondence "shall not be opened, inspected or read without express written authorization from the facility superintendent" and that "[s]uch authorization shall set forth the specific facts forming the basis for the action." *See* 7 NYCRR § 720.3(e). The regulation also prevents the Superintendent from authorizing the opening or inspection of outgoing mail "unless there is a reason to believe that the provisions of any department directive, rule or regulation have been violated ... or that such mail threatens the safety, security, or good order of a facility or the safety or well being of any person." *Id.*

an indication of a new security threat by an inmate with a history of advocating violence").

*Qualified Immunity*

■ Defendants contend that "[e]ven assuming plaintiff had a First Amendment right to not be subject to a mail watch, defendants should still be shielded from liability" so long as " 'their conduct does not violate a clearly established statutory or constitutional right.' " Objections at 9 (quoting *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir.1993)).

■ "Qualified immunity protects a defendant based on the objective reasonableness of his own actions in light of his knowledge of the facts at the time he acted." *Lee v. Coughlin*, 26 F.Supp.2d 615, 637 (S.D.N.Y.1998). The Magistrate determined that "it was not objectively reasonable for Kerrigan to believe that seizing, opening and reading plaintiff's outgoing, non-legal mail without good cause, and for Dixon to believe that the use of such mail as evidence … at a Tier III disciplinary hearing, would not violate the First Amendment." Report at 16. Further, the Magistrate determined that Selsky's affirmance of the "determination of the disciplinary hearing officer after being informed of the acts of misconduct [P]laintiff attributes to Kerrigan and Dixon" may not have been objectively reasonable. *Id.* *See also France*, 1987 WL 10724, at *3.

Defendant's entitlement to qualified immunity here is an issue of fact which "cannot be disposed of at this stage." *See Samuels v. Selsky*, 2002 WL 31040370, at *16 (S.D.N.Y. Sept.12, 2002); *Woods v. Goord*, 2002 WL 731691, at *10 (S.D.N.Y. Apr.23, 2002) ("[a]n immunity defense usu-

ally depends on the facts of the case … making dismissal at the pleading stage inappropriate").

**B. Due Process Claims**

■ Defendants "do not at this stage in the litigation object to the R & R's conclusion that plaintiff was entitled to due process protections in determining the Stabbing [i.e., alleged inmate misbehavior by Plaintiff]." Objections at 11. Rather, Defendants contend that "plaintiff received all the process due." [7] *Id.*

The Report stated that "[i]n determining whether a prisoner has a protected liberty interest in freedom from disciplinary confinement under due process principles, a court must examine the specific circumstances of the punishment." Report at 6. Magistrate Fox also states that "although the factual record is not determinative with respect to the conditions of [Plaintiff's] segregated confinement, based on its duration, the confinement constitutes a sufficient departure from the ordinary incidents of prison life so as to require due process protections." Report at 9. *See, e.g. Colon v. Howard*, 215 F.3d 227, 228–29 (2d Cir.2000).

■ "With respect to Tier III hearings, such as the one at issue here, the Fourteenth Amendment requires that: (1) the inmate receive at least twenty-four hours written notice of the disciplinary charges against him; (2) the inmate be permitted to call witnesses … (3) the inmate be judged by a fair and impartial hearing officer; (4) the disciplinary conviction be supported by some evidence; and (5) the inmate be provided with a written state-

---

**7.** Defendants argue that "Plaintiff's due process claims appear[ ] to be only that defendant Dixon wrongly relied upon the Letter and defendant Kerrigan's Stabbing [inmate misbehavior report], which was based only on

hearsay. For purposes of the plaintiff's due process rights, however, this evidence is sufficient to satisfy constitutional requirements." *Id.*

ment of fact findings that support the disposition as well as the reasons for the disciplinary action taken." *Samuels*, 2002 WL 31040370, at *11.

It cannot be determined without discovery whether these procedural criteria were met in this case. First, Plaintiff was served with a copy of the misbehavior report lodged by Sgt. H. Kerrigan on October 23, 1996, Complaint at IV, Statement of Claim, ¶ 2, and since the disciplinary hearing commenced on October 30, 2002, *id.*, it appears Plaintiff was provided with sufficient notice of the charges and that the hearing was commenced in a timely fashion. *See Samuels*, 2002 WL 31040370, at *14 ("[w]here an inmate is confined pending a disciplinary hearing ... the hearing must be held within seven days of the confinement") (citing 7 NYCCRR § 251–5.1(a)). Second, Plaintiff acknowledges that each of the three witnesses he requested (inmate Torres, Corrections Officer Perez, and Defendant Kerrigan) did, in fact, testify. *Id.* ¶¶ 5–6, 8–9. At the same time, in attempting to ask Sergeant Kerrigan "what specific facts form the basis of the action," Plaintiff was allegedly told by the hearing officer "that the sergeant had already answered that question." *Id.* ¶ 9. *See Colon*, 215 F.3d at 228–29; *Samuels*, 2002 WL 31040370, at *13. Third, Plaintiff appears to claim that Dixon, the hearing officer, disregarded a conflict in evidence between the investigative report assembled by prison officials and the testimony of Corrections Officer Pérez. *Id.* ¶¶ 5, 6. Fourth, Plaintiff asserts his conviction was based on the contents of the letter allegedly illegally seized. *Id.* ¶¶ 4, 8, 9. *See Knight*, 681 N.Y.S.2d at 720; *see also Samuels*, 2002 WL 31040370, at *12. Fifth, it is unclear from the record wheth-er Plaintiff was provided with a written statement of fact findings in support of his disciplinary determination.[8] *See id.* at *11.

In resolving a motion to dismiss, the absence of a sufficiently detailed record makes it "difficult for this Court to fully evaluate the merits of the parties' arguments." *Samuels*, 2002 WL 31040370, at *11, 13 ("dismissal is inappropriate, because it is uncertain whether [plaintiff's] punishment was supported by constitutionally sufficient evidence"); *Colon*, 215 F.3d at 232 ("development of a detailed record will assist appellate review"); *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

## C. Eighth Amendment Claim

■ Defendants contend that "plaintiff has not plead sufficient facts to establish either element" necessary to allege an Eighth Amendment violation. Objections at 12. Magistrate Fox observed that "[a]part from plaintiff's statements concerning deprivations he allegedly suffered while in ... confinement in SHU at Attica, the complaint fails to provide specific facts which would establish that the conditions of plaintiff's confinement involved a wanton infliction of pain." Report at 10. He also determined that "it does not appear plaintiff can prove no set of facts in support of his allegation that defendants have violated his constitutional right to be free from cruel and unusual punishment." *Id.* The Court believes that even when viewed liberally, the Complaint is defective with respect to this claim.

To establish his Eighth Amendment claim, Plaintiff must set forth facts supporting "(1) a deprivation that is objective-

---

**8.** It is also alleged that Plaintiff "objected to the lack of assistance provided" in connection with his employee assistant's inability to obtain documentation as to where the letter was found during a search of Plaintiff's cell. *Id.* ¶ 3. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 570, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

ly, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin,* 249 F.3d 156, 164–65 (2d Cir. 2001) (internal quotations and citation omitted); *Sims v. Artuz,* 230 F.3d 14, 21 (2d Cir.2000) ("[t]o prevail on a claim based on the conditions of [ ] confinement, a prisoner must show extreme deprivations, [b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society") (internal quotation and citation omitted); *Wilson v. Seiter,* 501 U.S. 294, 298–303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) ("cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment").

While Plaintiff generally alleges "emotional and psychological trauma" as a result of his keeplock confinement, he does not address the specifics giving rise to a (sufficiently) serious deprivation.[9] Complaint at IV–A. *See, e.g., Jackson v. Johnson,* 15 F.Supp.2d 341, 363 (S.D.N.Y.1998) ("[t]he mere placement in keeplock for 99 days is not sufficiently egregious to constitute cruel and unusual punishment under the Eighth Amendment"); *Hailey v. Provost,* 1997 WL 627547, at *6 n. 4 (N.D.N.Y. Oct. 9, 1997) ("[p]lacement in SHU, without more, does not rise to the level of an Eighth Amendment violation"); *Miller v. Lopes,* 1986 WL 1707, at *3 (D.Conn. Jan. 27, 1986) ("[i]n the eighth amendment context, loss of good time credit does not amount to cruel and unusual punishment"). Plaintiff must specify those aspects of his treatment/confinement for which he seeks

to hold Defendants liable. The Complaint "does not specify the basis for his claimed deprivation of the right to be free from cruel and unusual punishment." Report at 9.

"A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brown v. McElroy,* 160 F.Supp.2d 699, 706 (S.D.N.Y.2001). It is axiomatic that if Plaintiff has failed to allege a sufficiently serious deprivation, he cannot and does not adequately allege that the Defendants were aware of either the risk of harm posed or that the Defendants had a culpable intent to cause him harm. *See Farmer v. Brennan,* 511 U.S. 825, 840, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("Eighth Amendment liability requires consciousness of a risk" and its deliberate disregard). The Complaint is, therefore, also deficient as to facts indicating that the prison officials involved had a wanton state of mind when they were engaging in alleged misconduct. *See Hudson v. Greiner,* 2000 WL 1838324, at *7 (S.D.N.Y. Dec.13, 2000).

Nor does Plaintiff allege exhaustion of his administrative remedies as to the alleged Eighth Amendment violation, and the Report does not appear to address the issue. Thus, the Court cannot determine from the record whether Plaintiff satisfied the requirements of the Prison Litigation Reform Act of 1995 ("PLRA"), as amended, 42 U.S.C. § 1997e(a). *See Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152

---

**9.** Prior to the October 1996 disciplinary hearing, Plaintiff was transferred to Attica's SHU from Sing Sing's SHU, where Plaintiff was being held on an (unrelated) weapons violation. Complaint at IV, Statement of Claim, ¶ 1; Objections, Ex. 2.

L.Ed.2d 12 (2002) (finding the PLRA's requirement that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted" applicable to inmate's Eighth Amendment claim); *Webb v. Goord*, 192 F.Supp.2d 208, 211 (S.D.N.Y.2002) ("[b]ecause plaintiffs have failed to allege any facts or circumstances substantiating their compliance with the exhaustion requirement, the complaint should be dismissed on these alternative grounds").[10]

 Finally, Plaintiff's Eighth Amendment claim for monetary damages is insufficient because it fails to assert what, if any, physical injury resulted from his confinement. Complaint IV–A. Section 1997e(e) of the PLRA, 42 U.S.C. § 1997e(e), provides that "[n]o Federal civil actions may be brought by a prisoner . . . for mental or emotional injury while in custody without a prior showing of physical injury." This provision "targets only damage actions and 'has no restrictive effect on claims for declaratory or injunctive relief.'" *Dawes v. Walker*, 239 F.3d 489, 495 (2d Cir.2001) (quoting *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C.Cir.1998)); *Ford v. McGinnis*, 198 F.Supp.2d 363, 366–67 (S.D.N.Y.2001); *Hudson*, 2000 WL 1838324, at *4 (dismissing plaintiff's claims for failure to plead any physical injury).

## IV. Conclusion and Order

For the foregoing reasons, the Court adopts the Report [15 ] in part and denies

Defendants' motion to dismiss Plaintiff's First and Fourteenth Amendment claims. The Court dismisses Plaintiff's Eighth Amendment claim without prejudice and with leave to Plaintiff to amend the Complaint within 30 days, i.e., to serve and file an amended complaint on or before November 14, 2002. The parties are directed to appear by telephone at a settlement/scheduling conference with the Court on November 26, 2002, at 10:00 a.m. Counsel for Defendants is directed to arrange with Plaintiff and prison officials for this conference.

## REPORT and RECOMMENDATION

FOX, United States Magistrate Judge.

## I. INTRODUCTION

In this action, brought pursuant to 42 U.S.C. §§ 1983 and 1985, plaintiff Stacy Knight ("Knight"), *pro se*, contends that his rights to be free from cruel and unusual punishment and to procedural due process under the Eighth and Fourteenth Amendments were violated when the defendants caused him to be placed in keeplock[1] confinement following a disciplinary hearing in which plaintiff was found guilty of violating a prison rule. Plaintiff also contends that his right to receive and send mail, guaranteed under the First Amendment, was violated when the defendants seized plaintiff's personal correspondence in contravention of prison rules and regulations. Further, plaintiff contends that defendants Sergeant H. Kerrigan ("Kerri-

---

**10.** Plaintiff appears to have exhausted his administrative remedies as to his First and Fourteenth Amendment claims by appealing the disciplinary hearing determination. Complaint at IV, Statement of Claim ¶ 10. *See, e.g., Samuels*, 2002 WL 31040370, at *8 ("[d]isputes stemming from a disciplinary hearing are properly appealed directly and not through the Inmate Grievance Program . . . issues directly tied to the disciplinary

hearing which have been directly appealed need not be appealed again collaterally").

**1.** Keeplock is "a form of administrative segregation in which an inmate is confined to his cell and denied participation in normal prison activities, as well as telephone and commissary privileges." *Wright v. Coughlin*, 132 F.3d 133, 135 (2d Cir.1998).

gan"), of the Sing Sing Correctional Facility ("Sing Sing"), and Lieutenant Dixon ("Dixon"), of the Attica Correctional Facility ("Attica"), violated 42 U.S.C. § 1985 by conspiring to violate his civil rights.

The defendants have made a motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss this action for failure to state a claim upon which relief may be granted. They contend that plaintiff's complaint should be dismissed because: (1) plaintiff's segregation in keeplock confinement did not constitute an "atypical and significant hardship" and, therefore, did not deprive plaintiff of his constitutional rights under the Eighth and Fourteenth Amendments; (2) the defendants' confiscation and examination of plaintiff's mail was reasonably related to substantial governmental interests and, therefore, did not deprive plaintiff of his First Amendment rights; and (3) the defendants are shielded from liability to plaintiff by the doctrine of qualified immunity.

For the reasons which follow, I recommend that the defendants' motion be denied in part and granted in part.

## II. BACKGROUND

In considering the defendants' motion to dismiss, the Court accepts all of the facts alleged in plaintiff's complaint as true.

In October 1996, plaintiff was a prisoner at Sing Sing. On October 8, 1996, an incident occurred at that facility during which three inmates were stabbed. As a result of the assaults, which were related to gang activity, and after contraband was found, corrections personnel conducted a facility-wide investigation. In furtherance of the investigation, from October 13 to October 15, 1996, the facility was placed under a lockdown. As part of the lockdown, a mail watch was conducted and a letter, written by plaintiff and addressed to plaintiff's mother, was seized by prison officials. In the letter, dated October 13, 1996, plaintiff stated *inter alia* that he had "cut" three other inmates during the October 8, 1996, fracas. At the time that plaintiff's letter was intercepted, plaintiff was in the facility's Special Housing Unit ("SHU") based upon a weapons charge arising from a separate incident. Plaintiff was subsequently transferred to Attica.

On October 19, 1996, defendant Kerrigan filed a misbehavior report charging the plaintiff with having violated a prison disciplinary rule by assaulting other inmates. Attached to the report was plaintiff's letter to his mother. The letter was used as evidence against plaintiff at a Tier III disciplinary hearing conducted by defendant Dixon at Attica in October and November 1996.

During the hearing, plaintiff objected to the seizure and use of the letter he had written to his mother. Plaintiff claimed that the confiscation of his correspondence constituted "unauthorized censorship" and violated his First Amendment rights. Plaintiff claimed further that the letter had been opened and read in violation of prison regulations, which required corrections personnel to obtain written authorization from the facility superintendent before inspecting an inmate's outgoing correspondence.[2] According to plaintiff, although

---

**2.** The regulation at issue, section 720.3 of the New York Compilation of Codes, Rules and Regulations ("NYCRR"), in its most pertinent part, provides:

> Outgoing correspondence shall not be opened, inspected or read without express written authorization from the facility superintendent....
>
> The superintendent shall not authorize the opening or inspection of such outgoing mail unless there is a reason to believe that the provisions of any department directive,

Kerrigan testified at plaintiff's disciplinary hearing that he believed the seizure of plaintiff's mail had been authorized by the facility superintendent, there is no record of such authorization and, moreover, Kerrigan did not have sufficient independent information concerning plaintiff's alleged involvement in the stabbing incident to justify seizure of plaintiff's letter.

Plaintiff maintained that the sole basis for prison officials' identification of him as a suspect in the stabbing incident and, thus, for the filing of the misbehavior report against him, was the information contained in plaintiff's letter. Plaintiff asserted that, if he had been identified as a suspect prior to the inspection of his outgoing mail, his name would have appeared in the Unusual Incident Report which was filed by Kerrigan in connection with the stabbing incident. Plaintiff contends that since his name did not appear in that report, "as the record stands there [was] no valid reason to suspect plaintiff of [the] alleged assaults."

Following the disciplinary hearing, plaintiff was found guilty of assaulting other inmates; he received a penalty of 365 days in keeplock confinement. This determination was affirmed on appeal by defendant Donald Selsky ("Selsky"), Director of the SHU and Inmate Disciplinary Program for the New York State Department of Correctional Services ("DOCS").

In November 1998, plaintiff commenced a New York Civil Practice Law and Rules Article 78 proceeding to have a court review the disciplinary hearing determination finding him guilty of violating a prison disciplinary rule. The Article 78 proceeding was transferred to the New York State Supreme Court, Appellate Division, Fourth Department, which annulled the determination of the disciplinary hearing officer and ruled that all references to the disciplinary charge brought against plaintiff be removed from his DOCS file. *See Matter of Knight v. Goord,* 255 A.D.2d 930, 681 N.Y.S.2d 719 (1998). In reaching its finding, the court concluded that the evidence used at the disciplinary hearing, that is, plaintiff's October 13, 1996, letter to his mother, had been seized in contravention of DOCS' rules and regulations.

In bringing his § 1983 action, plaintiff claimed that he was "falsely imprisoned where [he] was denied the rights and privileges" enjoyed by prisoners in the general prison population, and made to suffer "emotional and psychological trauma." Plaintiff seeks compensatory and punitive damages.

## III. DISCUSSION

*Standard of Review*

A court may dismiss an action pursuant to Fed.R.Civ.P. 12(b)(6), only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief." *Cohen v. Koenig,* 25 F.3d 1168, 1171–1172 (2d Cir. 1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 [1957] ). In considering the motion, the court must take "as true the facts alleged in the complaint and draw[ ] all reasonable inferences in the plaintiff's favor." *Jackson Nat'l Life Ins. v. Merrill Lynch & Co.,* 32 F.3d 697, 699–700 (2d Cir.1994). The court may consider all papers and exhibits appended to the complaint as well as any

rule or regulation have been violated, that any applicable state or Federal law has been violated, or that such mail threatens the safety, security, or good order of a facility or the safety or well being of any person.

Such written authorization shall set forth the specific facts forming the basis for the action.

7 NYCRR § 720.3(e)(1).

matters of which judicial notice may be taken. *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995); *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993). Additionally, when a plaintiff is proceeding *pro se,* courts are to construe the complaint liberally. *See, e.g., Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997). "A complaint should not be dismissed simply because a plaintiff is unlikely to succeed on the merits." *Baker v. Cuomo,* 58 F.3d 814, 818 (2d Cir.1995).

*Due Process Claim*

"A prisoner asserting that he was denied due process in connection with prison disciplinary hearings that resulted in segregative confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed 'an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Sims v. Artuz,* 230 F.3d 14, 22 (2d Cir.2000)(quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 [1995]); *see also Colon v. Howard,* 215 F.3d 227, 230 (2d Cir.2000); *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998).

In determining whether a prisoner has a protected liberty interest in freedom from disciplinary confinement under due process principles, a court must examine the specific circumstances of the punishment. *See Sims,* 230 F.3d at 22. In particular, a court must examine "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and ... the duration of the disciplinary segregation imposed compared to discretionary confinement." *Id.* (quoting *Wright,* 132 F.3d at 136).

Although the Second Circuit has not established a bright-line rule concerning the length or type of confinement that would give rise to an atypical and significant hardship, it has determined that the *Sandin* standard is not met unless the sanctions are onerous. *See Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999). The Second Circuit has ruled that a prisoner's confinement for 305 days in standard SHU conditions "was 'atypical' and a 'severe hardship' within the meaning of *Sandin,*" and has instructed the district courts to develop a detailed factual record in cases challenging segregative confinements of durations "within the range bracketed by 101 days and 305 days." *Colon,* 215 F.3d at 229, 232. *See also Lee v. Coughlin,* 26 F.Supp.2d 615, 637 (S.D.N.Y.1998) (finding that 376 days in SHU constituted an atypical and significant hardship).

In the instant case, plaintiff alleged that his confinement in keeplock for 365 days violated his right to procedural due process. In addition to complaining of the length of his sentence, Knight alleged that his punishments included a loss of phone privileges and a recommendation of a loss of twelve months of good time.[3]

Defendants contend that, although keeplock confinement involves conditions harsher than those experienced by the general inmate population, at the time of his disciplinary hearing plaintiff was housed, not in the general population, but rather in SHU. Consequently, defendants maintain, since the conditions of plaintiff's confinement after the disciplinary hearing were comparatively less restrictive than those imposed on him prior to the hearing, the time spent by plaintiff in keeplock did

---

**3.** Plaintiff's claim that he was "falsely imprisoned where [he] was denied the rights and privileges enjoyed by prisoners in the general prison population," is here construed as a restatement of plaintiff's Fourteenth Amendment procedural due process claim and not as a separate state law claim of false imprisonment.

not amount to an "atypical and significant hardship" within the meaning of *Sandin*.

Defendants are correct in stating that the change in conditions represented by removal from SHU and placement in keeplock normally would involve a decrease in the severity and restrictiveness of an inmate's confinement.[4] However, the *Sandin* standard addresses changes in the conditions of confinement measured against the ordinary incidents of prison life. Thus, plaintiff's removal from SHU and placement in keeplock is not dispositive with respect to the extent to which the conditions of plaintiff's disciplinary segregation "differ from other routine prison conditions." *See Welch v. Bartlett*, 196 F.3d 389, 394 (2d Cir.1999)(noting that a comparison between the duration of a plaintiff's SHU sentence and the SHU terms received by others who were convicted of misbehavior was not the comparison required by *Sandin* because it failed to establish whether the plaintiff's deprivation was more serious than typically endured by prisoners as an ordinary incident of prison life). Furthermore, the nature of the punishments actually imposed on plaintiff is a matter in dispute.

In his complaint, plaintiff did not allege any specific punishments imposed on him other than the loss of phone privileges and twelve months of good time, as noted earlier. However, in his memorandum of law, submitted in opposition to the defendants' motion to dismiss, plaintiff alleges that his segregated confinement in SHU at Attica, the facility to which plaintiff was transferred after the October 8, 1996 incident at Sing Sing, imposed on him conditions of confinement that were, among other things, racist, sadistic, hazardous and unsanitary. Also, plaintiff asserts that his segregation in "Attica's infamous 'snakepit' (SHU)" was a result of the disciplinary hearing conducted in October and November 1996 and the "arbitrary censorship of [his] outgoing mail."

In their reply memorandum of law, defendants dispute plaintiff's assertions, contending that plaintiff's SHU confinement in Attica was a continuation of his SHU confinement in Sing Sing, and was imposed on plaintiff as the result of the earlier weapons charge, rather than the disciplinary hearing determination. Defendants assert that "it does not follow that plaintiff would end up in SHU when the decision in the hearing at issue sentenced him to the less restrictive Keep Lock."

A more detailed factual record, such as the Second Circuit in *Colon* instructed the district courts to develop in cases of the type presented here, might reveal that the conditions of confinement that plaintiff alleges in his opposition to defendants' motion to dismiss were not imposed or were not atypical. In the absence of such a record, however, it does not appear beyond doubt that plaintiff can prove no set of facts in support of his procedural due process claim.

Furthermore, the complaint alleged that the sentence imposed on Knight was of sufficient length to be atypical and significant. Knight was sentenced to serve 365 days in keeplock, thus exceeding the 305-day period found atypical and significant in *Colon*. Therefore, although the factual record is not determinative with respect to

---

**4.** The usual conditions of SHU confinement in New York include solitary confinement for 23 hours per day, exercise for one hour per day, two showers per week, and denial of various privileges available to the general population such as the opportunity to work and to obtain out-of-cell schooling. In addition, the frequency and duration of visits is less than in the ordinary population, and the number of books allowed in the cell is limited. *See, e.g., Colon*, 215 F.3d at 230.

the conditions of Knight's segregated confinement, based on its duration, the confinement constitutes a sufficient departure from the ordinary incidents of prison life so as to require due process protections under *Sandin.* Accordingly, plaintiff's Fourteenth Amendment due process claim should not be dismissed for failure to state a claim upon which relief may be granted.

*Eighth Amendment Claim*

Knight's complaint does not specify the basis for his claimed deprivation of the right to be free from cruel and unusual punishment under the Eighth Amendment. Construing plaintiff's *pro se* complaint liberally, *see Boddie,* 105 F.3d at 860, plaintiff's statement that he suffered "emotional and psychological trauma" as a result of his segregated confinement could be read as an attempt to allege an Eighth Amendment violation.

"The Supreme Court has held that the Eighth Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency by which penal measures must be evaluated." *Trice v. Clark,* No. 94 Civ. 6871, 1996 WL 257578, at *2 (S.D.N.Y. May 16, 1996). The Eighth Amendment is violated when the deprivation alleged is sufficiently serious and unnecessary in nature. *See Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). Thus, "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.*

Plaintiff stated in his complaint that the emotional and psychological trauma he suffered as a result of the defendants' actions was "manifested through perceptual distortions and illusions [,] overt paranoia, panic attacks and problems with emotional control, and lack of [a] sense of personal safety." Apart from plaintiff's statements concerning deprivations he allegedly suffered while in segregative confinement in SHU at Attica, the complaint fails to provide specific facts which would establish that the conditions of plaintiff's confinement involved a wanton infliction of pain. However, in the absence of a sufficiently detailed factual record concerning the actual conditions of plaintiff's confinement, it does not appear that plaintiff can prove no set of facts in support of his allegation that defendants have violated his constitutional right to be free from cruel and unusual punishment. Accordingly, plaintiff's Eighth Amendment claim should not be dismissed for failure to state a claim upon which relief may be granted.

*First Amendment Claim*

Prison inmates have a First Amendment right in the free flow of their mail, both incoming and outgoing. *See Heimerle v. Attorney General,* 753 F.2d 10 (2d Cir. 1985); *France v. Coughlin,* No. 85 Civ. 6347, 1987 WL 10724, at *2 (S.D.N.Y. May 4, 1987). Prison restrictions on mail must be reasonably related to legitimate penological interests. *See Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Legitimate penological interests include preserving prison security and maintaining order and discipline. *See Security and Law Enforcement Employees v. Carey,* 737 F.2d 187, 203 (2d Cir.1984).

Permissible restrictions on inmates' outgoing legal mail are extremely limited. *See France,* 1987 WL 10724, at *2 (citing *Washington v. James,* 782 F.2d 1134 [2d Cir.1986] ). However, where good cause is shown, outgoing non-legal mail can be read without violating inmates' First Amendment rights. *See United States v. Workman,* 80 F.3d 688, 698 (2d Cir.1996). Dangerous outgoing correspondence, which would support a finding of good cause, may include "escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion." *Thornburgh v.*

*Abbott,* 490 U.S. 401, 412, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989).

In this case, the record evidence is insufficient to establish that inspection of plaintiff's mail was based on good cause. Plaintiff's letter was opened and inspected in the course of a mail watch following an incident during which three inmates were stabbed. The assaults took place in the context of gang-related activity and necessitated a facility-wide investigation and lockdown.

Defendants claim that plaintiff's letter to his mother indicates that he was suspected of being a member of a gang and of involvement in the stabbing incident when a weapon was recovered from him during a strip search. Thus, according to defendants, "it is clear that this particular letter, coming from this particular inmate, at this particular time, would clearly have been suspect." However, there is nothing in the record to indicate that defendants possessed an independent source of information concerning plaintiff's alleged participation in the events that gave rise to the mail watch. Therefore, there was no justification for seizing plaintiff's mail. The letter from plaintiff cannot have been suspect based upon information contained only in the letter itself.

Consequently, while the prevention of ongoing criminal activity and the preservation of prison security and discipline constitute legitimate penological interests, under the circumstances, the inspection of plaintiff's outgoing mail cannot be said to have been reasonably related to those interests. Accordingly, in the absence of a sufficiently detailed record, plaintiff's First Amendment claim should not be dismissed for failure to state a claim upon which relief may be granted.[5]

*Personal Involvement—Section 1983 Claim*

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999)(citing *Dwares v. City of New York,* 985 F.2d 94, 98 [2d Cir.1993] ). "Allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987).

In this Circuit, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977) (citing *Mukmuk v. Comm'r of Dep't of Correctional Servs.,* 529 F.2d 272, 275 [2d Cir.1976] ). A § 1983 complaint must contain allegations that a defendant is "directly and personally responsible for the purported unlawful conduct." *Alfaro,* 814 F.2d at 886 (citing *Black v. U.S.,* 534 F.2d 524, 527–528 [2d Cir.1976] ); *see also Lee v. State of New York Dep't of Correctional*

---

**5.** Although, as noted above, the Appellate Division found, at the conclusion of an Article 78 proceeding, that plaintiff's letter was seized in contravention of DOCS' rules and regulations, that finding is not dispositive with respect to plaintiff's First Amendment claim. The violation of a prison regulation does not necessarily constitute the deprivation of a constitutional right. Where, as here, the regulation involved has been found to be con-

stitutional and, indeed, to afford prison inmates more protection than the Constitution requires, plaintiff's First Amendment right to receive and send mail would not have been violated by defendants' failure to obtain the proper authorization before seizing plaintiff's letter. *See, e.g., France v. Coughlin,* 1987 WL 10724, at *3–4 (citing *Golden v. Coombe,* 508 F.Supp. 156, 160 [S.D.N.Y.1981] ).

*Servs.,* No. 97 Civ. 7112, 1999 WL 673339, at *15 (S.D.N.Y. Aug. 30, 1999).

Personal involvement of a supervisory employee in § 1983 actions may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Lee,* 1999 WL 673339, at *15; *see also Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). Some allegation that a supervisor was personally involved in a manner described above is necessary in order for a complaint to survive a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6). *See Tarafa v. Manigo,* 897 F.Supp. 172 (S.D.N.Y. 1995).

Based on the parties' submissions, the Court finds that the record evidence is sufficient to permit a § 1983 action to go forward against defendants Kerrigan, Dixon and Selsky.

Plaintiff has alleged facts that indicate that Kerrigan, who filed a misbehavior report against plaintiff following the incident in which three inmates were stabbed, and Dixon, who conducted the subsequent Tier III disciplinary hearing, participated directly in the alleged violations of plaintiff's constitutional rights. Further, plaintiff has alleged facts that suggest that Selsky, who reviewed and affirmed the disciplinary hearing officer's determination, was informed of the alleged violations of plaintiff's constitutional rights and failed to remedy the wrong. Where challenged conduct is attributable, at least in part, to a person who was acting under color of state law and the conduct deprived a plaintiff of a right guaranteed under the Constitution, a valid claim under § 1983 has been asserted. *See Snider v. Dylag,* 188 F.3d at 53. That is the situation with respect to defendants Kerrigan, Dixon and Selsky.

However, where a plaintiff makes "allegations which are nothing more than broad, simple and conclusory statements[,]" no valid claim under § 1983 can be said to have been made. *Alfaro Motors Inc.,* 814 F.2d at 887. Plaintiff has alleged that Keane, the Superintendent of Sing Sing, was negligent in supervising subordinates who committed wrongful acts because Kerrigan was acting under Keane's supervision at the time he seized plaintiff's outgoing mail. Without more, the Court finds that this broad and conclusory allegation with respect to defendant Keane is insufficient to state a claim under § 1983.[6] *See id.*

*Qualified Immunity*

The doctrine of qualified immunity shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known", *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102

---

**6.** Plaintiff does not specify the basis for his allegation of a violation by defendants Kerrigan and Dixon of 42 U.S.C. § 1985. The only applicable provision of that section concerns the participation in a conspiracy by two or more persons to impede the due course of justice. *See* 42 U.S.C. § 1985(2). Plaintiff did not allege any specific facts in support of a conspiracy on the part of the defendants. Accordingly, plaintiff's § 1985 claim should be dismissed for failure to state a claim upon which relief may be granted.

S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–3040, 97 L.Ed.2d 523 (1987); *Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir.1995). The doctrine of qualified immunity would protect a government official from personal liability in a § 1983 claim.

The defendants contend that they may not be found liable to plaintiff because of the doctrine of qualified immunity. When analyzing a claim for qualified immunity in a § 1983 action, a court must first determine whether the plaintiff has stated that a constitutional violation occurred. Thereafter, the court must determine whether the constitutional right that plaintiff alleges was violated was clearly established at the time of the alleged wrongful act. If so, then the court may proceed to determine whether qualified immunity shields a government actor from liability for damages. *See Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

At the time of the events that gave rise to this action, the Supreme Court had made it clear—and thus a reasonable person would have known—that a sentence of sufficient length to be an atypical and significant hardship, in that it constitutes a substantial departure from the ordinary incidents of prison life, requires due process protections under the Fourteenth Amendment. Similarly, a reasonable person would have known that, at the time of the events that gave rise to this action, plaintiff had a right to be free of conditions of confinement that differed from other routine prison conditions to such an extent that they were violative of the Eighth Amendment. Finally, a reasonable person would have known that, at the time of the events that gave rise to this action, plain-

tiff had a First Amendment right to receive and send mail.

Since the Court has already determined that plaintiff has failed to establish that defendant Keane engaged in conduct that was violative of plaintiff's constitutional rights, the qualified immunity issues before the Court are whether: (a) it was objectively reasonable for Kerrigan and Dixon to believe that the acts of misconduct plaintiff attributes to them would not violate the Fourteenth, Eighth and First Amendments; and (b) it was objectively reasonable for Selsky, after being informed of the acts of misconduct plaintiff attributes to Kerrigan and Dixon through plaintiff's appeal from the disciplinary hearing determination, and after affirming that determination, to believe that his conduct would not violate the Fourteenth, Eighth and First Amendments.

The Court finds that it was not objectively reasonable for Kerrigan to believe that seizing, opening and reading plaintiff's outgoing, non-legal mail without good cause, and for Dixon to believe that the use of such mail as evidence against plaintiff at a Tier III disciplinary hearing, would not violate the First Amendment. In addition, the Court finds that it was not objectively reasonable for Kerrigan to believe that offering plaintiff's mail as evidence against him at a disciplinary hearing which resulted in a sentence imposing segregative confinement of great severity and duration, and for Dixon to believe that imposing that sentence at the conclusion of the hearing, would not violate the Fourteenth and Eighth Amendments. Further, the Court finds that it was not objectively reasonable for Selsky to believe that affirming the determination of the disciplinary hearing officer after being informed of the acts of misconduct plaintiff attributes to Kerrigan and Dixon would not violate the Fourteenth, Eighth and First Amend-

ments. Consequently, defendants Kerrigan, Dixon and Selsky are not entitled to dismissal of the claims made against them on the ground of qualified immunity.

## IV. RECOMMENDATION

For the reasons set forth above, I recommend that defendants' motion to dismiss for failure to state a claim be denied with respect to plaintiff's Fourteenth, Eighth and First Amendment claims against defendants Kerrigan, Dixon and Selsky. In addition, I recommend that defendants' motion to dismiss for failure to state a claim be granted with respect to plaintiff's § 1985 claim against defendants Kerrigan and Dixon, and with respect to all claims made against defendant Keane.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 40 Foley Square, Room 201, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Berman. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

June 28, 2002.