James **BROOKS**, Plaintiff–Appellant,

v.

Michael A. **DiFASI**, Corrections Officer, employee of the N.Y.S. Department of Correctional Services, separately and in his personal capacities, et al., Defendants,

Cheryl Lee, employee of the N.Y.S Department of Correctional Services, separately and in her personal capacities, Donald Selsky, employee of the N.Y.S. Department of Correctional Services, separately and in his official capacities, Defendants–Appellees.

No. 772, Docket 96–2559.

United States Court of Appeals, Second Circuit.

Argued Jan. 15, 1997.

Decided April 9, 1997.

Robert C. Weissflach, Buffalo, NY (Jaeckle, Fleischmann & Mugel, Buffalo, NY, of counsel), for plaintiff-appellant.

Martin A. Hotvet, Assistant Attorney General, Albany, NY (Dennis C. Vacco, Attorney General of the State of New York and Peter H. Schiff, Deputy Solicitor General, Albany, NY, of counsel), for defendants-appellees.

Before: VAN GRAAFEILAND, LEVAL, and CABRANES, Circuit Judges.

LEVAL, Circuit Judge:

James Brooks, a prisoner at the Elmira Correctional Facility, appeals from a grant of summary judgment by the United States District Court for the Western District of New York (John T. Elfvin, *Judge*), dismissing his civil rights action under 42 U.S.C. § 1983. Brooks alleges that defendants Cheryl Lee and Donald Selsky, who are prison officials, deprived him of procedural due process in disciplinary proceedings. Lee presided over a hearing at which Brooks was sentenced to 365 days of segregated cell confinement with loss of privileges. Brooks appealed that sentence to Selsky, director of the Department of Corrections' Special Housing/Inmate Disciplinary Program, who affirmed the imposition of discipline, although reducing the period of confinement to 180 days. Brooks claims that he was denied his due process right to call witnesses at the disciplinary hearing.

The district court ruled, without considering the duration or conditions of the punishment imposed, that Brooks had no liberty interest in being free of disciplinary confinement because it did not impose a hardship that is "atypical and significant" under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Because we disagree with the district court's interpretation of *Sandin*, we reverse and remand for further proceedings.

*Background*

In October 1990, Brooks had a physical altercation with four prison guards. Afterwards, all four guards filed written reports, and two filed additional misbehavior reports charging Brooks with refusal to obey a direct order, violation of frisk procedures, and possession of a weapon (a broken razor). Brooks claims that the guards attacked him without provocation and then filed false complaints to cover up their own misbehavior.

Brooks was charged with a disciplinary infraction, and defendant Lee, a corrections officer at the Elmira facility, presided over the disciplinary hearing. Brooks asked to call all four guards and two inmates as witnesses. After taking the testimony of one inmate and one guard, Lee told Brooks that she was denying his request for additional witnesses because "their testimony would be redundant." Lee found Brooks guilty on all charges and imposed a penalty of one year in keeplock with the loss of privileges and good time credit. Brooks appealed to Selsky in his capacity as Director of the Special Housing/Inmate Disciplinary Program. In his appeal Brooks claimed he was denied his right

to call witnesses. Selsky responded by affirming imposition of the discipline, but reduced Brooks's time in keeplock to 180 days.

Brooks then filed an Article 78 petition in New York State Supreme Court, Chemung County. The state court, in an opinion dated November 12, 1991, concluded that Brooks was denied "his constitutional and regulatory rights to call witnesses on his behalf" and ordered his good time credits restored and his disciplinary record expunged. The court thus annulled the disciplinary finding. By this time Brooks had completed the service of the 180-day confinement.

In 1993 Brooks filed this lawsuit *pro se*, claiming that his constitutional rights had been violated by the guards' use of excessive force, by Lee's refusal to allow him to call witnesses at his hearing, and by Selsky's affirmance of the imposition of discipline. Counsel was appointed for Brooks and filed an amended complaint. In January 1996, the district judge granted Lee's and Selsky's motion for summary judgment and dismissed the case against them. In May 1996, the court heard a jury trial of Brooks's claims against the guards. The jury found for Brooks against two of the guards and awarded token damages of one dollar against each. Judgment was entered on these awards. In this appeal, Brooks challenges only the summary dismissal of his claims against Lee and Selsky.

In granting summary judgment, the district court did not decide whether the procedure at Brooks's hearing would satisfy constitutional due process. Instead, the court ruled that Brooks's discipline did not implicate any due process right. The court held that, under *Sandin*, prisoners in New York have no liberty interest in avoiding disciplinary confinement, regardless the duration. The judge reasoned that because New York regulations permit extended administrative, or protective, confinement—subject to periodic review—even lengthy disciplinary confinement could not constitute an "atypical and significant hardship." *Id.* Accordingly, Judge Elfvin dismissed Brooks's claim.

*Discussion*

■■■ The district court correctly found that, after *Sandin*, a prisoner has no constitutional right to any procedural safeguards—regardless what state statutes or regulations provide—unless the deprivation complained of imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at ——, 115 S.Ct. at 2300. Brooks argues, however, that Judge Elfvin failed to determine factual issues necessary for an assessment of whether his disciplinary confinement constituted such a hardship under *Sandin*. We agree.

In reaching his decision, Judge Elfvin did not have the benefit of our recent opinion in *Miller v. Selsky*, 111 F.3d 7 (2d Cir.1997). In that case, we held that "*Sandin* did not create a *per se* blanket rule that disciplinary confinement may never implicate a liberty interest." *Id.*, at 9 (and citing cases from other circuits that have reached the same conclusion). Instead, the Court in *Sandin* carefully considered the specific conditions of the inmate's confinement and found that the prisoner-plaintiff's 30 days in segregated confinement "did not work a major disruption in his environment" and thus was not the sort of deprivation capable of triggering due process protection. 515 U.S. at ——, 115 S.Ct. at 2301. In coming to that conclusion, the Court found that the conditions of the challenged confinement "with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody" so that "the confinement did not exceed similar, but totally discretionary confinement *in either duration or degree of restriction.*" *Id.* (emphasis added).

Concluding that the "durational aspect" of Brooks's confinement was of "little import," Judge Elfvin did not consider the length of the confinement in determining whether it imposed an atypical and significant hardship. Nor did the judge make any findings about the restrictiveness of Brooks's disciplinary keeplock or about the prevailing conditions in administrative confinement or in the prison at large. Instead, the district judge concluded that disciplinary confinement could not impose an atypical hardship under *Sandin*

because New York prison regulations "make little distinction between disciplinary and non-disciplinary confinement" and allow inmates to be segregated for extended periods in administrative or protective custody, subject to periodic review.

A comparison between administrative and disciplinary confinement was part of the Court's analysis in *Sandin*. The Court did not suggest, however, that regulations permitting lengthy administrative confinement compel the conclusion that extended disciplinary confinement is necessarily compatible with due process. To the contrary, the decision in *Sandin* entailed careful examination of the actual conditions of the challenged punishment compared with ordinary prison conditions. *Miller* at 8–9, citing — U.S. at — – ——, 115 S.Ct. at 2301–02.

■ After *Sandin*, in order to determine whether a prisoner has a liberty interest in avoiding disciplinary confinement, a court must examine the specific circumstances of the punishment. *Miller* at 8–9. *Cf., Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (per curiam), (affirming dismissal of inmate's action because the district court's "extensive fact-finding" supported its decision and the inmate had "not shown that the conditions of his confinement in the SHU were dramatically different from the 'basic conditions of [his] indeterminate sentence.'"(quoting *Sandin*, 515 U.S. at ——, 115 S.Ct. at 2301, 132 L.Ed.2d 418)). *See also Samuels v. Mockry*, 77 F.3d 34 (2d Cir.1996), and *Branham v. Meachum*, 77 F.3d 626 (2d Cir.1996) (remanding for district courts to consider whether placement in segregated housing deprived inmates of a liberty interest). The mere fact that prison regulations allow for lengthy administrative confinement in some situations does not obviate this central factual inquiry. First, as Judge Elfvin acknowledged, we have never held that New York prisoners have no liberty interest in avoiding long-term administrative confinement. Second, the fact that administrative or protective custody is subject to periodic review, while disciplinary confinement is not, may be significant in determining whether lengthy disciplinary confinement constitutes an "atypical and significant hardship." Furthermore, the district court's approach depended on the observation that New York's prison regulations make little or no distinction between disciplinary and non-disciplinary segregated confinement. While it may be true that the regulations do not distinguish between the conditions of administrative and punitive confinement, it does not necessarily follow that the actual conditions are similar. Finally, the mere fact that New York's prison regulations permit extended administrative segregation does not tell how frequently or for what durations such segregation is imposed.

The district court must reconsider the defendants' motion for summary judgment. Because *Sandin* was decided after the parties briefed the motion, neither side submitted evidence or made arguments on the issue of whether Brooks's confinement was an "atypical and significant" deprivation. Nor did the state have the opportunity to make the argument it raises on appeal that New York statutes and prison regulations do not create a liberty interest in avoiding segregated confinement. Unless the court decides the motion on a different basis, the state should be offered the opportunity to expand the record on the pertinent issues, and Brooks to reply. If, after reviewing the record, the district court again decides that Brooks's confinement did not impose an "atypical and significant hardship," the court should identify with specificity the facts upon which its conclusion is based. The district court is also free to decide the motion on the basis of the other issues raised in defendants' motion, including whether defendants are entitled to qualified immunity and whether Brooks received due process at his hearing.

### Conclusion

The summary judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.