**Thomas WRIGHT, Plaintiff–Appellant,**

**v.**

**Thomas A. COUGHLIN, III, Commissioner, Department of Correctional Services; Donald Selsky, Deputy Commissioner, Special Housing and Discipline, Department of Correctional Services; Bennedict, Captain, Hearing Officer, Attica Correctional Facility; Walter Kelly, Superintendent, Attica Correctional Facility; J. Kihl, Hearing Officer, Attica Correctional Facility, Defendants–Appellees.**

No. 96–2276.

United States Court of Appeals, Second Circuit.

Submitted Nov. 26, 1997.

Decided Jan. 5, 1998.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY (Peter H. Schiff, Deputy Solicitor General; Peter G. Crary, Assistant Attorney General; Martin A. Hotvet, Assistant Attorney General, Albany, New York of counsel) for defendants-appellees.

Before: WALKER, Jr., LEVAL, Circuit Judges, and STANTON, District Judge.*

JOHN M. WALKER Jr., Circuit Judge:

Thomas Wright, ("Wright") a prisoner, appeals from a judgment of the United States District Court for the Western District of New York (Leslie G. Foschio, *Magistrate Judge* ), that denied his motion to reconsider the district court's judgment dismissing his claims as to two defendants and granting summary judgment to another. Wright sued employees of the New York Department of Correctional Services ("DOCS") for violating his constitutional rights, pursuant to 42 U.S.C. § 1983. He alleged that various DOCS officials had deprived him of due process of law in connection with prison disciplinary proceedings following a prison riot that led to a period of disciplinary confinement at the Attica Correctional Facility ("Attica"). The district court dismissed Wright's action against defendants Thomas A. Coughlin, Donald Selsky, Bennedict, and J. Kihl on various grounds including absolute immunity and untimeliness. Wright moved for recon-

sideration of the district court's dismissal as to defendants Selsky and Kihl in a motion to vacate, pursuant to Fed.R.Civ.P. 60(b), claiming that neither defendant was entitled to absolute immunity. The parties agreed to proceed before Magistrate Judge Foschio. Finding that the disciplinary confinement was not sufficiently "atypical or significant" under *Sandin v. Conner*, 515 U.S. 472, 482, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), to implicate a protectable liberty interest under the Due Process Clause, Magistrate Judge Foschio denied Wright's motion to vacate the judgment against Selsky and Kihl as "futile" and dismissed plaintiff's complaint against the sole remaining defendant, Kelly.

On appeal, plaintiff asserts that the district court erred in finding as a matter of law that his disciplinary confinement, consisting of 168 days in the Special Housing Unit ("SHU") followed by 120 days in keeplock confinement, was not an "atypical and significant hardship" under *Sandin*. Plaintiff also argues that the district court should not have granted summary judgment in the face of materially disputed evidentiary issues. We vacate and remand for further proceedings.

## I. BACKGROUND

During all times relevant to this appeal, Wright was incarcerated at Attica. On the evening of May 26, 1990, plaintiff was present in a prison recreation yard when a riot broke out. During the riot, prison property was destroyed. After the disturbance subsided, correctional officers served plaintiff with two Inmate Misbehavior Reports charging him with several disciplinary infractions. In the reports, the complaining officers alleged that they observed plaintiff breaking "at least 50 windows" and starting a large fire in the recreation area fueled by several benches and other state property.

On May 31, 1990, defendant Bennedict, a DOCS Hearing Officer, convened a Tier III disciplinary hearing to decide the charges against Wright. A Tier III proceeding can result in the imposition of penalties within a

---

range from minor, such as reprimand or loss of a specified privilege, to severe, such as cell confinement for an unlimited duration and loss of good time. *See* 7 NYCRR § 254.7. At the hearing Wright was found guilty of rioting, arson, and damaging property. Hearing Officer Bennedict imposed a penalty of 545 days in the SHU, of which 180 days were suspended and 90 days were deferred, and 180 days of loss of good time, as well as loss of telephone and commissary privileges.

Plaintiff filed an administrative appeal claiming that he was denied the right to call relevant witnesses and that Hearing Officer Bennedict failed to examine videotapes of the incident. The penalty was affirmed by defendant Deputy Commissioner Selsky on August 6, 1990.

Plaintiff then challenged the Tier III determination in the New York Supreme Court pursuant to Article 78 of the Civil Practice Law and Rules, claiming that the hearing officer had failed to review relevant evidence, specifically certain videotapes and photographs of the incident. The Supreme Court concluded that the videotapes were relevant evidence which should have been considered by the hearing officer, vacated the penalty, and ordered a new hearing.

At a second Tier III hearing, on June 5, 1991, Hearing Officer Kihl, a defendant in this action, viewed the videotapes of the incident for approximately thirty minutes and found no exculpatory evidence on the tapes. Wright was not permitted to review the tapes simultaneously. Wright requested the testimony of three witnesses to support his defense of innocence, but Kihl allowed only the testimony of one of them, rejecting the testimony of the others as redundant. Wright was found guilty on all charges and given a new sentence of 168 days confinement in the SHU and 120 days in keeplock confinement, a form of administrative segregation in which an inmate is confined to his cell and denied participation in normal prison activities, as well as telephone and commissary privileges.

Wright pursued an administrative appeal from Hearing Officer Kihl's decision which was affirmed by defendant Selsky. Wright then filed a second Article 78 proceeding, claiming that Hearing Officer Kihl was biased and had refused to give him the opportunity to call relevant witnesses in his defense. Agreeing with Wright that "the hearing officer did not conduct the hearing in a fair and impartial manner," and that Wright was denied his right to call witnesses, the New York State Supreme Court vacated this second administrative judgment and directed the defendants to expunge the disciplinary proceedings from Wright's record. The Supreme Court concluded that it would be inappropriate to remand for a new hearing because by the time it had ruled, Wright had completed his sentence, serving a total of 288 days in restrictive confinement.

Wright then filed this action, pursuant to 42 U.S.C. § 1983, seeking monetary damages for an asserted violation of his due process rights under the Fourteenth Amendment. He named as defendants Thomas A. Coughlin, III, the Commissioner of the DOCS and its Chief Executive Officer; Donald Selsky, a DOCS employee and the Deputy Commissioner for special housing; Captain Bennedict, a DOCS officer; Walter Kelly, a DOCS employee and the Superintendent of Attica; and Kihl, a hearing officer at Attica. The district court (William M. Skretny, *District Judge*) dismissed Wright's action against Coughlin because he had no personal involvement in the alleged violation, against Selsky and Kihl based on absolute immunity, and against Bennedict as untimely. The plaintiff appealed the dismissals to this court. Finding that a final order had not been issued against all defendants, we dismissed the appeal. In July of 1995, defendant Kelly moved for summary judgment. Soon thereafter, Wright moved, pursuant to Fed. R.Civ.P. 60(b), to vacate the district court's ruling dismissing the complaint against Selsky and Kihl on immunity grounds. The parties agreed to proceed to a final district court determination before Magistrate Judge Foschio, pursuant to 28 U.S.C. § 636(c), with an appeal to be taken directly to the Second Circuit. Subsequently, in a decision and order dated March 18, 1996, Magistrate Judge Foschio held that Wright had not alleged a constitutional violation, granted Kelly's mo-

tion for summary judgment, and denied plaintiff's motion to vacate Judge Skretny's order as to Selsky and Kihl.

Wright appeals from that ruling. On appeal, Wright argues that the district court erred in not considering duration as a factor in determining whether his confinement constituted an "atypical and significant" hardship and that the district court improperly credited the testimony of defendant Kelly in granting his summary judgment motion.

## II. DISCUSSION

■ Plaintiff contends that the district court erred in finding as a matter of law that the disciplinary confinement to which he was subject, consisting of 168 days confinement in the SHU and 120 days in keeplock confinement, was not an "atypical and significant hardship" under *Sandin v. Conner,* 515 U.S. 472, 482, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). In *Sandin,* the Supreme Court altered the landscape of prisoner due process, constructing a new approach for analyzing claims of prisoners who are segregated from the prison population. To establish a due process violation, it is necessary to prove that the state has created a protected liberty interest and that the process due was denied. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989); *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996).

■ To identify a protectable liberty interest under the *Sandin* framework, prisoners must establish that a given restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 482, 115 S.Ct. at 2300. *Sandin* articulated relevant factors which courts should evaluate in determining what constitutes an "atypical and significant" hardship. These include (1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement. *Id.* at 484, 115 S.Ct. at 2301.

■ On appeal, Wright contends that the district court erred in determining that his confinement did not constitute an "atypical and significant hardship" under *Sandin.* First, plaintiff argues that the district court failed to consider the duration of the confinement, a critical factor in the *Sandin* analysis. Second, Wright claims that the district court erred in failing to recognize the distinction between disciplinary and administrative confinement.

In reaching its decision, the district court did not have the benefit of our recent opinion in *Brooks v. DiFasi,* 112 F.3d 46 (2d Cir.1997). In *Brooks,* the district court determined that the plaintiff's disciplinary confinement was not "atypical or significant" without considering the duration of the punishment. On appeal, we held that the district court should have considered the duration of that prisoner's confinement in determining whether his punishment constituted an "atypical and significant" hardship. *Id.* at 49. Accordingly, we vacated the district court's decision which held that the plaintiff had no liberty interest, basing the vacatur on the district court's failure to consider the length and restrictiveness of the confinement. *Id.*

In the instant case, the district court did not consider the length of Wright's confinement and instead found that "the durational aspect of the plaintiff's confinement is also of little import." *Wright v. Coughlin,* 93–CV–601S(F)(W.D.N.Y. Mar. 18, 1996) at 14 (quoting *Brooks v. DiFasi,* 1995 WL 780976 at * 5 (W.D.N.Y.), *vacated and remanded,* 112 F.3d 46 (2d Cir.1997)). In concluding that Wright's confinement was not "atypical and significant," the district court relied on the fact that duration was of "little import"—a proposition we rejected in *Brooks.* Accordingly, summary judgment must be vacated and the case remanded to the district court for consideration of the duration of Wright's confinement.

Remand is also necessary because the district court failed to consider the distinctions between disciplinary and administrative confinement. In particular, the district court found that because prisoners may be confined administratively to the SHU for long

periods, subject to periodic reviews mandated by regulation, Wright's 168 days in disciplinary SHU were of little significance. *See Wright v. Coughlin,* 93–CV–601S(F), at 14. However, periodic review differentiates nondisciplinary confinement from disciplinary confinement. Involuntary protective custody status is reviewed every thirty days; administrative segregation is reviewed every seven days for the first two months and every thirty days thereafter; and SHU detention of inmates who are awaiting a disciplinary hearing, or who have recently arrived from another correctional facility and are awaiting a determination of their suitability for the general prison population are reviewed every twenty-four hours. *See* NYCRR tit. 7 §§ 330.3, 301.4(d), and 301.3(c). Disciplined prisoners sent to SHU receive no review at all.

Access to periodic confinement reviews—and, thus, for those administratively assigned to SHU, the monthly prospect of being released from SHU—might differentiate disciplinary from administrative confinement. Therefore, despite the similarities of the conditions, the length of disciplinary confinement in the SHU could be meaningful in determining whether the confinement was an "atypical and significant" hardship as contemplated by *Sandin.* A comparison between administrative and disciplinary confinement is therefore necessary. *See Brooks,* 112 F.3d at 49 ("the fact that administrative or protective custody is subject to periodic review, while disciplinary confinement is not, may be significant in determining whether lengthy disciplinary confinement constitutes an 'atypical and significant hardship.'").

In order to determine whether a liberty interest has been affected, district courts are required to examine the circumstances of a confinement, *Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997), and to identify with specificity the facts upon which its conclusion is based. *See, e.g., id.; Brooks,* 112 F.3d at 49; *see also, Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997)("we have indicated the desirability of fact-finding before determining whether a prisoner has a liberty interest in remaining free from segregated confinement") (citations omitted); *cf. Frazi-er v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996)(affirming the dismissal of an inmate's action because the district court had done "extensive fact finding" and "extensive proof" had been adduced.). On remand, the district court must make specific findings supporting its conclusion as to whether Wright's 288 day disciplinary confinement implicates a liberty interest protected by due process.

Because the district court did not consider duration as a factor in its *Sandin* analysis as required by *Brooks,* 112 F.3d at 46, and failed to consider how the lack of access to periodic confinement reviews might differentiate disciplinary from administrative confinement, we vacate and remand for further proceedings.

*Summary Judgment*

Wright also argues that the district court erred in granting defendant Kelly's motion for summary judgment because there were disputed evidentiary issues. Magistrate Judge Foschio found that under *Sandin,* Wright's confinement was not "atypical or significant" and that he "was not deprived of any protected liberty interest" and granted defendant Kelly's motion for summary judgment. *Wright v. Coughlin,* 93–CV–601S(F), at 15.

We review *de novo* a district court's grant of summary judgment. *See Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (per curiam). A district court may grant summary judgment (and we may affirm such a decision) only if, viewing the facts in the light most favorable to the non-movant, there exists no genuine issue of material fact for adjudication. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.")(emphasis omitted). To defeat summary judgment, the non-movant must produce specific facts indicating that such an issue exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). In assessing the record "the non-movant will have his

allegations taken as true," *Samuels,* 77 F.3d at 36 (citation and quotation omitted), and the district court should draw all factual inferences in favor of the non-moving party.

█ In deciding that Wright's conditions of confinement were not "atypical or significant" under *Sandin,* the district court failed to view the facts in the light most favorable to the non-movant. Plaintiff alleged in his affidavits in support of his opposition to defendant's motion for summary judgment that the conditions during his confinement were materially different from those alleged by the defendants. The district court ignored Wright's allegations about his confinement conditions and instead credited the testimony of the defendant, citing to defendant Kelly's affirmation. *Wright v. Coughlin,* 93–CV–601S(F), at 14–15, (citing the Affirmation of Walter R. Kelly, Attica Superintendent).

In particular, plaintiff alleged that during his confinement he was denied access to "rehabilitative, educational and other work-incentive programs" to which administratively confined prisoners were permitted access. *See* Plaintiff's Supporting Affidavit In Opposition to Summary Judgment at ¶ 5. In addition, Wright stated in his affidavit that he was denied his personal belongings, including clothing, and not given sufficient food. He also alleged that he was deprived of opportunities for work, programming, and recreation. He further claimed that he lost numerous privileges—including telephone usage, receipt of packages, and conjugal visits. *Id.* at ¶ 7. Finally, Wright swore that he had "no access to the law library." *Id.* at ¶ 4.

Conversely, defendant Kelly, the Superintendent of Attica, stated in his rule 56 statement that:

> While confined in the SHU and in keeplock, plaintiff continued to have access to both the facility's law and non-law libraries, access to the facility medical staff and to NYS Office of Mental Health psychiatric staff. Plaintiff was able to receive and send mail, including packages, and he could participate in both legal and non-legal visits. Additionally, plaintiff could participate in daily physical exercise and he received the same meals as general population inmates, as well as having access to facility educational programs, including self-study.

The district court improperly resolved the conflicts in the Wright's and Kelly's affidavits by crediting the testimony of the latter. The district court adopted defendant Kelly's affirmation nearly verbatim:

> Plaintiff was also able to send and receive mail, including packages, participate in daily exercise activities, and to receive the same meals as the general population inmates. Additionally, Plaintiff could participate in both legal and non-legal visits, and had access to facility educational programs, including cell study.

*Wright v. Coughlin,* 93–CV–601S(F), at 15, (citing the Affirmation of Walter R. Kelly, Attica Superintendent).

Because the district court did not assess the record in the light most favorable to the non-moving party, Wright, and instead resolved disputed issues of fact by crediting Kelly's assertions, summary judgment was improper. Therefore, we vacate the district court's order granting defendant's motion for summary judgment.

### III. CONCLUSION

For the foregoing reasons, we vacate the district court judgment and remand for further proceedings consistent with this opinion.