Gloria Deanna DICKERSON, Plaintiff,

v.

MUTUAL OF AMERICA and Thomas J. Moran, President and CEO, Defendants.

No. 09 Civ. 822(NRB).

United States District Court, S.D. New York.

March 9, 2010.

Gloria Deanna Dickerson, New York, NY, for Plaintiff.

Peter L. Altieri, Esq., Epstein Becker & Green, P.C., New York, NY, for Defendant.

### MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

The plaintiff, proceeding pro se, brings this action against the defendants based on their alleged failure to comply with disclosure obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The defendants, Mutual of America ("MOA") and Thomas J. Moran (the President and CEO of MOA), have moved to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.

For the reasons explained below, we grant MOA summary judgment with respect to the plaintiff's claims that the company has (1) failed to comply with its disclosure obligations in violation of 29 U.S.C. § 1132 and (2) breached its fiduciary duties in violation of 29 U.S.C. § 1104. Pursuant to Rule 12(b)(6), we dismiss the plaintiff's claim that MOA has violated the criminal provisions of ERISA. Finally, we dismiss the entirety of the plaintiff's claims against the defendant Moran pursuant to Rule 12(b)(6).

### *BACKGROUND*[1]

Stripped of its hyperbole, the plaintiff's complaint arises out of a straightforward dispute over a request for information about pension benefits that accrued to her ex-husband while he worked for various affiliates of the United Way. At the time of the request, the plaintiff was in the midst of a divorce proceeding with her husband.[2]

### I. The Plaintiff's Request for Information from MOA

On December 20, 2008, the plaintiff wrote to MOA identifying herself "as the designated beneficiary" for her then-husband's pension plans and requesting the "full information regarding all retirement/pension products administered by Mutual of America on our behalf." (Letter to William S. Conway, dated Dec. 20, 2008, appended to complaint.) She noted that her husband had worked in five different United Way offices: (1) St. Louis, Missouri; (2) Madison, Wisconsin (in Dane County); (3) Cleveland, Ohio; (4) Pittsburgh, Pennsylvania (in Allegheny County); and (5) New York City, New York (collectively, "the United Way Affiliates"). The plaintiff requested information for all of the pension plans provided by these offices.

On the same day, the plaintiff wrote to Robert Krasman, the Chief Administrative and Financial Officer of United Way of Allegheny County, and requested "information regarding the estimated value of our Retirement/Pension Plan and any related products sponsored by United Way of Allegheny County on our behalf." (Letter to Robert Krasman, dated Dec. 20, 2008, appended to complaint.)

---

1. The facts in this section are based on the plaintiff's allegations and documents that she has submitted to the Court, as well as affidavits and documents provided by the defendants. There is no factual dispute between the parties.

2. The plaintiff was represented by an attorney, Allan E. Mayefsky, in the divorce proceeding. (*See* Def. Mem., Kordecki Aff. Ex. C at 3.)

On December 24, 2008, Krasman responded to the plaintiff by forwarding an e-mail that had been sent to him the previous day by Meghan McIntyre, an employee in the Pittsburgh Regional Office of MOA. (Letter from Robert Krasman, dated Dec. 24, 2008, appended to complaint.) In that e-mail, McIntyre told Krasman that MOA's policy was "not to provide benefit information to someone other than the participant, unless we have written authorization from the plan participant to do so." (E-mail to Robert Krasman, dated Dec. 23, 2008, appended to complaint.) McIntyre stated that authorization was not required if the request came from an attorney representing the participant or his employer; a governmental organization; someone with a court order or subpoena; an attorney entitled to the information through a power of attorney; or a participant's legal guardian. McIntyre further stated that "[r]egardless of the fact that [the plaintiff] may be a named beneficiary, under the current circumstance, she is not entitled to the information she requested." (*Id.*)

The plaintiff eventually obtained from Krasman a copy of the documents she was seeking concerning the Allegheny County plan. (Complaint ("Compl.") at 5.) She states that Krasman has "complied with the law" but claims that she has yet to receive "a letter from the Plan Administrator"—which she believes to be MOA—"acknowledging their plans to comply with the law." (*Id.*)

## II. The Complaint

The plaintiff filed her complaint on January 28, 2009. The substance of her case is premised on MOA's alleged failure to adequately respond to her request for information. She claims that MOA is the plan administrator for "several of the United Way organizations nationally" and that the company's failure to provide her with the information she seeks is a violation of ERISA's disclosure obligations. (Compl. at 3.)

As the basis for federal jurisdiction, the plaintiff claims that the defendants have violated "federal ERISA laws governing pensions." (*Id.* at 2.) More specifically, she alleges "breach of fiduciary responsibilities and criminal interference with beneficiary protected rights—concealing information; refusal to provide information to which [the plaintiff] is entitled under [29 U.S.C. § 1132]." (*Id.*)

More broadly, the plaintiff alleges that MOA has been "choos[ing] sides" in matrimonial disputes between United Way employees and spouses seeking pension benefit information. (*Id.* at 6.) She points to three pieces of evidence with respect to her particular case: (1) the December 23, 2008 e-mail from McIntyre, which stated that the plaintiff was not entitled to the information she requested concerning the Allegheny County plan "under the circumstance"; (2) her husband's supposed friendship with the defendant Moran (the President and CEO of MOA); and (3) her husband's alleged position as a paid consultant to MOA. (*Id.* at 5.)[3]

The plaintiff's sole factual allegation concerning the defendant Moran is that he "is a friend to [her] husband." (*Id.*) Moran is otherwise absent from the complaint and the plaintiff's opposition to the defendants' motion.

---

**3.** Despite the sweeping rhetoric in her complaint and in other papers submitted to the Court, the plaintiff does not allege that any other particular individual has been mistreated by MOA while requesting pension benefit information in the midst of a divorce proceeding.

### III. MOA's Responses to the Plaintiff's Request

Between the filing of the plaintiff's complaint and the briefing on the defendants' motion, MOA provided information to the plaintiff on three separate occasions. Some of this was done at the direction, and under the supervision, of the Court, while MOA continued to deny any legal obligation to respond to the plaintiff.

### A. MOA's February 19, 2009 Letter to the Plaintiff

On February 19, 2009, Robert Kordecki, a Senior Vice President at MOA, wrote to the plaintiff and explained that the company understood her request "to be for pension benefit statements" under Section 105 of ERISA, 29 U.S.C. § 1025. (Def. Mem., Ex. C at 1.) Although Kordecki maintained that MOA was not the plan administrator for any of the United Way Affiliates, he nevertheless provided the plaintiff with detailed information on each of her ex-husband's plans.

Kordecki informed the plaintiff that the St. Louis and Dane County plans previously sponsored by the United Way had been terminated and that the benefits were payable under MOA annuity contracts issued in conjunction with the termination processes. (*Id.* at 2.) He further advised the plaintiff that MOA could not provide information about the Cleveland plan because MOA's "relationship with [the United Way of Greater Cleveland] regarding such plans or arrangements ended several years ago." (*Id.*) Kordecki suggested that the plaintiff contact the United Way of Greater Cleveland directly. (*Id.*)

Kordecki then provided uniform information on the New York City and Allegheny County pension plans, the annuity contracts issued after the Dane County and St. Louis plans were terminated, and a thrift plan provided by the United Way of

New York City under Section 403(b) of ERISA. (*Id.* at 2–3.) For each plan, Kordecki outlined the total accrued benefit, the date payments could commence, the payment schedule and method, and whether the plaintiff's ex-husband was vested in the respective benefits. (*Id.*)

Separately that same day, Kordecki sent the plaintiff copies of the New York City pension plan and 403(b) thrift plan. (*See* Def. Mem., Exs. D–F.)

### B. MOA's March 30, 2009 Letter to the Plaintiff

On March 16, 2009, the Court held an initial pretrial conference with the parties. MOA continued to maintain that the company was not the plan administrator for the United Way Affiliates at the time of the plaintiff's request and that the company was therefore under no obligation to provide her with the information she requested. The Court nevertheless asked MOA's counsel to provide the plaintiff with the names of the actual plan administrators and to look into whether MOA could provide the plaintiff with pension benefit estimates in a more standardized format than the letter she had received on February 19th.

Counsel for MOA responded to the plaintiff on March 30, 2009. (Def. Mem., Ex. G.) He provided contact information for the New York City, Allegheny County, and Cleveland affiliates, indicating that they served as their own plan administrators. MOA's counsel further reiterated that the Dane County and St. Louis plans had been terminated and that benefits were being paid pursuant to annuity contracts.

### C. MOA's April 2, 2009 E-mail to the Plaintiff

On April 2, 2009, MOA's counsel sent the plaintiff statements reflecting the ben-

efits in the New York City pension plan, the New York City 403(b) thrift plan, and the Allegheny County plan. (Def.Mem., Ex. H.) The attorney explained that similar statements did not exist for the terminated plans that had been converted to annuity contracts.

## IV. The Plaintiff's Objection to MOA's Responses to Her Request

Notwithstanding MOA's efforts, the plaintiff contends that the company's responses have been inadequate. In her opposition to the defendants' motion, her sole substantive complaint about the information she has received is as follows: "Mutual of America provided Plaintiff with the pension plan as it existed after her husband retired. His benefits should be based upon the plan as it existed when he retired. Plaintiff has never received the benefit estimates based upon that plan." (Pl.Opp.Aff.¶ 14.)

## V. Developments Following the Briefing of the Defendant's Motion[4]

On January 12, 2010, the matrimonial court overseeing the plaintiff's divorce from her husband entered a Qualified Domestic Relations Order ("QDRO") awarding the plaintiff one-half of her husband's accrued pension benefits. (Letter from the plaintiff, dated Feb. 22, 2010, Ex. A.) The QDRO identifies the current administrators of the New York City, Allegheny County, and Cleveland plans as the respective United Way affiliates, and it acknowledges that MOA is the successor to the Dane County and St. Louis plans. (*Id.* at 2.)

Following the QDRO, the plaintiff contacted the relevant affiliates and MOA in order to request her share of her ex-husband's pension benefits. (Letter from the plaintiff, dated Feb. 22, 2010, at 2.) She communicated with Kordecki, regarding the Dane County and St. Louis annuity contracts, through letters and telephone conversations between January 30, 2010 and February 12, 2010. (*Id.* at 3.) On February 12, 2010, Kordecki informed the plaintiff that MOA had accepted the QDRO but that the company needed "to process the QDRO and establish separate accounts for each interested party." (Letter from the plaintiff, dated Feb. 22, 2010, Ex. F.) He stated that it would ordinarily take "ninety days to process a retirement application that is unencumbered" and that the QDRO would "add [ ] another layer of complexity to the process" but that the "process has begun." (*Id.*) That same day, Kordecki informed the plaintiff that he would be out of the office the following week but that another MOA employee, Aydna Pressley, would handle her requests in his absence. (*Id.*)

While Kordecki was away, the plaintiff sought to obtain a copy of the Dane County annuity contract in order to address a "financial emergency." (Letter from the plaintiff, dated Feb. 22, 2010, at 4.) She needed to provide her grandson's school with documentation showing that she could pay his tuition. (*Id.*) Pressley indicated that she did not have the contract at hand and advised the plaintiff to contact the United Way of Dane County directly. (*Id.*) The plaintiff eventually received the contract from the United Way affiliate on February 22, 2010–which, she notes, came after threatening to involve this Court. (*Id.* at 5.) After the plaintiff obtained information concerning funds available to her through the Cleveland pension plan, her grandson was allowed to re-enroll in

---

4. These events were reported to the Court through a letter from the plaintiff, which the Court received on February 25, 2010.

school. (*Id.*) As a result of these events, for which the plaintiff blames MOA, her grandson missed a grand total of two days of school. (*See id.*)

In her supplemental submission detailing these events, the plaintiff criticized MOA for its inability to quickly provide her with a contract of the Dane County annuity contract—ultimately, it took approximately a week—and questioned Kordecki's statement that MOA needed 90 days to respond to her inquiry concerning the annuity contracts.

On March 2, 2010, Pressley provided the plaintiff with the information concerning the annuity contracts that she requested following the entry of the QDRO. (*See* Letter from the defendants, dated Mar. 5, 2010 & Ex 1.) MOA has also explained that with respect to the New York City and Allegheny County plans—for which MOA claims it is a service provider, not a plan administrator—the company expects to provide the plaintiff with letters outlining her benefits by March 15, 2010. (*Id.*)

## DISCUSSION

### I. Applicable Legal Standards

The defendants contend that the plaintiff's claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (respectively, "Rule 12(b)(1)" and "Rule 12(b)(6)") or, in the alternative, that the defendants should be granted summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56").

 As a general matter, a *pro se* complaint is reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). Courts must interpret *pro se* pleadings "to raise the strongest arguments that they sug-

gest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

 When "the parties lack a legally cognizable interest in the outcome" of a case, it is moot and the federal courts lack subject matter jurisdiction. *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). An alternative formulation of this rule requires "that a plaintiff have a 'personal stake' in the litigation." *Fox v. Board of Trustees,* 42 F.3d 135, 140 (2d Cir.1994), *cert. denied,* 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995) (quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). The mootness doctrine "ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit." *Cook v. Colgate University,* 992 F.2d 17, 19 (2d Cir.1993) (citations omitted).

 In assessing a motion to dismiss for lack of subject matter jurisdiction, the Court "must accept as true all material factual allegations in the complaint" and should refrain from drawing argumentative inferences in favor of the party contesting jurisdiction. *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). However, the Court is not confined to the allegations in the complaint and may consider evidence outside the pleadings, such as affidavits. *Antares Aircraft v. Federal Repub. of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992).

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

 A motion to dismiss may be granted only where "it appears beyond

doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir.1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Courts ruling on motions to dismiss must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir.2007).

■■■■ To survive a motion to dismiss, a complaint must include "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Id.* This pleading standard applies in "all civil actions." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009) (internal quotations omitted). Notwithstanding the deference accorded to *pro se* plaintiffs, they remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*. *See, e.g., Schwamborn v. County of Nassau*, 348 Fed.Appx. 634, 634–35 (2d Cir.2009).

### C. Motion for Summary Judgment Pursuant to Rule 56

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

On a motion for summary judgment, the initial burden rests with the moving party to make a prima facie showing that no material fact issues exist for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this showing is made, "[t]o defeat summary judgment, the non-movant must produce specific facts" to rebut the movant's showing and to establish that there are material issues of fact requiring a trial. *See Wright v. Coughlin*, 132 F.3d 133, 137–38 (2d Cir.1998) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). In determining whether a genuine issue of material fact exists, a court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. *See Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243, 253 (2d Cir.2002).

### II. The Plaintiff's Claims Against MOA

Construing the plaintiff's complaint liberally, the Court has identified three claims against MOA: (1) failure to comply with ERISA disclosure obligations in violation of 29 U.S.C. § 1132; (2) failure to comply with ERISA fiduciary duties imposed by 29 U.S.C. § 1104; and (3) criminal violations of ERISA. We analyze each of these claims in turn.

## A. Failure to Comply with Disclosure Obligations in Violation of 29 U.S.C. § 1132

Under ERISA, a beneficiary of a covered plan may sue to enjoin certain acts or practices, including the failure to comply with ERISA's various disclosure obligations. 29 U.S.C. § 1132(a)(3). A separate provision specifies that a beneficiary may institute a civil action against a plan administrator who fails or refuses to comply with a request for any information which the plan administrator is required to furnish to the beneficiary. *Id.* § 1132(c)(1)(B).

■ A plan administrator is generally required to comply with a proper request within 30 days, but penalties for failure to do so are discretionary. *Id.* If the plan administrator fails to comply with a request for information within the 30–day window, the administrator "may in the court's discretion" be liable to the beneficiary in the amount of up to $100 per day from the date of failure or refusal. *Id.* A court may also "order such other relief as it deems proper." *Id.* Penalties, however, are generally "not imposed when a plaintiff has failed to demonstrate that his rights were harmed or otherwise prejudiced by the delay in his receipt of the information." *Chambers v. European Am. Bank and Trust Co.,* 601 F.Supp. 630, 638 (E.D.N.Y. 1985) (collecting cases).

The plaintiff's case turns on whether MOA failed to comply with certain disclosure obligations as a plan administrator under ERISA. But as we explain below, MOA was not the administrator for any of the United Way Affiliates at the time of the plaintiff's request, nor is MOA currently the administrator for the affiliates. Further, we find no authority for the proposition that MOA, even if it were a plan administrator, needs to respond to the plaintiff's only remaining request for information.

### 1. MOA's Relationship with the United Way Affiliates

■ ERISA defines a plan administrator as (1) "the person specifically so designated by the terms of the instrument under which the plan is operated"; (2) "if an administrator is not so designated, the plan sponsor"; or (3) "in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person" as the Secretary of Labor may prescribe by regulation. 29 U.S.C. § 1002(16)(A)(i)-(iii). Applying this definition to the affidavits and documents submitted by the parties, we conclude that MOA was not the plan administrator for the United Way Affiliates at the time of the plaintiff's request, nor does the company currently serve as the administrator for any of the affiliates.

The plaintiff, in her complaint and her opposition to the defendants' motion, has repeatedly claimed otherwise, but has produced little more than her assertions. For its part, MOA has submitted a sworn affidavit from Robert Kordecki, a Senior Vice President of the company, who states that "[a]t the Lime of the Plaintiff's request for information, and at all times thereafter, MOA was not, and still is not, the plan administrator for any of" the plans in question. (Def. Mem., Kordecki Aff. ¶ 5.) Rather, MOA currently acts as a service provider to some of the plans or has provided an annuity contract in conjunction with the termination of others. (*Id.* ¶¶ 6–12.)

The plaintiff has provided two broad categories of evidence in support of her claim that MOA is the plan administrator for the United Way Affiliates. However, both sets of evidentiary submission—which address, at most, two of the plans at is-

sue—have been decisively rebutted by evidence put forward by MOA and, indeed, by the plaintiff herself.

First, the plaintiff points to the December 24, 2008 letter from Robert Krasman, Chief Administrative and Financial Officer of United Way of Allegheny County, who stated, in response to the plaintiff's inquiry, that he had "contacted Mutual of America[,] who administers the Pension Plan for United Way of Allegheny County." (Letter from Robert Krasman, dated Dec. 24, 2008, appended to complaint.) It is far from clear that Krasman's statement was intended as a representation concerning MOA's legal status as a plan administrator, but in any event, MOA has produced the relevant section of the current pension plan for the United Way of Allegheny County, which clearly indicates that the plan administrator is the employer itself. (*See* Def. Rep. Mem., Kordecki Aff. Ex. I at 4.) Given that ERISA defines a plan administrator as "the person specifically so designated by the terms of the instrument under which the plan is operated," 29 U.S.C. § 1002(16)(A)(i), it is clear as a matter of law that the United Way of Allegheny County serves as its own administrator.

Second, the plaintiff points to a collection of documents that purport to identify MOA as the plan administrator for the United Way of New York City in 2004 and 2005. (*See* Pl. Letter to the Court dated June 26, 2009.)[5] We need not pass on the relevance of these materials, or whether the plaintiff is correctly interpreting them, because MOA concedes that it was the plan administrator for the United Way of New York City through December 31, 2005. (Def. Mem., Kordecki Aff. ¶ 12.) Since that time, however, according to the current United Way of New York City Defined Benefit Pension Plan, the employer has been serving as its own plan administrator. (Def. Mem., Kordecki Aff. Ex. E at 4.)

With respect to the other plans—for the United Way affiliates in St. Louis, Dane County, and Cleveland—the plaintiff has produced nothing more than her own conclusory assertions to suggest that MOA is the administrator. For its part, MOA's counsel in this case conducted an investigation and informed the plaintiff that the St. Louis and Dane County plans had been converted into annuity contracts and that the plan administrator for the Cleveland plan was the United Way of Greater Cleveland. (*See* Def. Mem., Altieri Aff. ¶ 3 & Ex. G.)

Indeed, the defendants' argument has now been validated by the plaintiff herself. In her supplemental submission of February 25, 2010, the plaintiff enclosed a copy of the QDRO that was recently issued. That order specifically notes that the current plan administrators for the New York City, Allegheny County, and Cleveland plans are the relevant United Way affiliates themselves. (Letter from the plaintiff, dated Feb. 22, 2010, Ex. A at 2.)

---

5. The documents include an Annual Return/Report prepared by the audit firm Loeb & Troper for the 2005 calendar year (Pl. Letter to the Court dated June 26, 2009, Ex. B); a January 28, 2003 memorandum (which appears to be an internal United Way memorandum) indicating that MOA had provided information concerning the plaintiff's ex-husband's pension benefits (*id.* Ex. F at A–24); an October 7, 2004 draft memorandum from PricewaterhouseCoopers, which suggests that MOA assisted in the preparation of a benefit plan for the United Way of New York City (*id.* Ex. F at A–26–28); and a December 14, 2004 draft memorandum prepared by the law firm Paul, Weiss, Rifkind, Wharton & Garrison LLP, which refers to MOA as the United Way of New York City's "actuarial consultant" (*id.* at A–29).

Applying the definition of "plan administrator" under 29 U.S.C. § 1002(16)(A)(i)(iii) to the sizable and uncontradicted evidence adduced by MOA and by the plaintiff, we conclude that MOA was not the plan administrator for any of the United Way Affiliates at the time of the plaintiff's request for information or at any time thereafter. We therefore grant summary judgment in favor of MOA on the plaintiff's claim that the company has violated its ERISA disclosure obligations.

## 2. MOA's Efforts to Provide the Plaintiff with the Requested Information

 Notwithstanding the fact that MOA was not the plan administrator for the United Way Affiliates during the relevant time period, the company nevertheless attempted to acquire the information that the plaintiff appeared to be requesting. For the purposes of comprehensiveness and clarity, we explain why, even if MOA were the plan administrator for the United Way Affiliates, the plaintiff would still not have a claim against the company for failure to satisfy its disclosure obligations.

In his February 19, 2009 letter on behalf of MOA, Kordecki explicitly stated that the company understood the plaintiff's request "to be for pension benefit statements" under Section 105 of ERISA, 29 U.S.C. § 1025, and he asked the plaintiff to "please let us know promptly" if this was not the case. (Def. Mem., Kordecki Aff. Ex. C at 1.) Under that provision, a pension benefit statement must indicate, "on the basis of the latest available information," (1) "the total benefits accrued" and (2) "the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable." 29 U.S.C. § 1025(a)(2). Kordecki provided precisely this informa-

tion to the plaintiff for the New York City, Allegheny County, Dane County, and St. Louis plans, while noting that MOA's relationship with the United Way of Greater Cleveland had "ended several years ago" and that the plaintiff should direct her request for information directly to that organization. (Def. Mem., Kordecki Aff. Ex. C at 2–3.)

The plaintiff has never indicated that the requests underlying her lawsuit sought anything beyond pension benefit statements, but, in her opposition to the defendants' motion, she claims that MOA's responses have been inadequate because they are based on the plans as they "existed when [her husband] retired" rather than "after [he] retired." (Pl. Opp.Aff.¶ 14.) It is for this reason—because the plaintiff still maintains a nominal interest in the litigation—that it would be inappropriate to dismiss her complaint as moot pursuant to Rule 12(b)(1).

Nevertheless, the plaintiff has pointed to no authority, and the Court has found none, that requires the disclosure of historical pension benefit information. Indeed, Section 1025 requires a pension benefit statement to be based "on the latest information available." 29 U.S.C. § 1025(a)(2). Moreover, even if the plaintiff could request pension benefit statements based on historical information, the plaintiff here would not be entitled to additional statements, since Section 1025 also provides that "[i]n no case shall a participant or beneficiary of a plan be entitled to more than 1 statement ... in any 12–month period." *Id.* § 1025(b).

Thus, even if MOA were the administrator for any of the United Way Affiliates, we have found no legal authority to suggest that the plaintiff would be entitled to the information that she has sought through this lawsuit.

The events that transpired following the briefing of the defendants' motion do not alter this conclusion. The Court has identified no legal basis for concluding that MOA violated its ERISA disclosure obligations by taking approximately one month to respond to the plaintiff's request of January 30, 2010, regarding the benefits to which she is entitled under the Dane County and St. Louis annuity contracts. There is also no legal basis to support the plaintiff's suggestion that she was entitled to a copy of the Dane County annuity contract immediately upon her demand during the week of February 15, 2010—which, in any event, she received in approximately one week, after following the suggestion of MOA to reach out directly to the United Way of Dane County.

## B. Breach of Fiduciary Duties in Violation of 29 U.S.C. § 1104

The plaintiff also charges that MOA has breached fiduciary duties owed to her. (Compl. at 2.) Given the plaintiff's allegations and the evidence beyond the pleadings that has been provided to the Court, we conclude that MOA is entitled to summary judgment on this claim.

■ It is at least possible, as a theoretical matter, that MOA could be held to the duties imposed by ERISA upon plan fiduciaries. ERISA defines a "fiduciary" to include entities who exercise certain types of discretionary authority, control, or responsibility with respect to a pension plan, as well as entities who render investment advice to the plan. *See* 29 U.S.C. § 1002(21)(A). Assuming MOA were a plan administrator, the company might also be considered a fiduciary. *See, e.g., Aetna Health Inc. v. Davila,* 542 U.S. 200, 220, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). In that case, MOA could be held to the standard of care for ERISA fiduciaries specified in 29 U.S.C. § 1104(a).

Nevertheless, we need not consider MOA's alleged failure to comply with any fiduciary duties in any detail. The plaintiff's complaint is premised on MOA's alleged failure to comply with its disclosure obligations as a plan administrator under ERISA, but as we have explained, MOA was not, in fact, a plan administrator within the meaning of the statute for any of the United Way Affiliates at the time of the plaintiff's request or at any time thereafter.

Accordingly, we grant MOA's motion for summary judgment with respect to this claim.

## C. Criminal Violations of ERISA

Finally, the plaintiff claims that MOA has engaged in "criminal interference with beneficiary protected rights." (Compl. at 2.) Although the defendants have moved to dismiss or, in the alternative, for summary judgment with respect to the entirety of the plaintiff's complaint, they have not specifically addressed this claim. We hereby dismiss it pursuant to Rule 12(b)(6). *See, e.g., Leonhard v. United States,* 633 F.2d 599, 609 n. 11 (2d Cir.1980) (courts may dismiss claims *sua sponte* pursuant to Rule 12(b)(6)).

Any person or entity who "willfully violates" the reporting and disclosure obligations of ERISA may be subject to criminal penalties. 29 U.S.C. § 1131. As we have explained, however, we see no reason to conclude that MOA violated any disclosure obligations to the plaintiff, let alone that the company did so "willfully."

■ The more significant obstacle to the plaintiff's claim, however, is that she lacks the standing to enforce ERISA's criminal provisions. ERISA requires the Department of Labor to forward evidence of crimes to the United States Attorney General, who is authorized to prosecute

criminal violations. *See* 29 U.S.C. §§ 1136, 1204(b). The enforcement of the criminal provisions is the exclusive province of the Attorney General. *See West v. Butler*, 621 F.2d 240, 244 (6th Cir.1980) (enforcement of ERISA's criminal provisions "is the exclusive prerogative of the Attorney General"); *see also* 60A Am.Jur.2d Pensions § 798 (2009). Thus, while we stress again that there is no reason to believe that the defendants have engaged in criminal conduct, we note that the plaintiff's remedy for any perceived criminal conduct lies first with the Department of Labor and eventually with the Attorney General.

### III. The Plaintiff's Claims Against Moran

 The plaintiff's claims against Moran are identical to those brought against MOA. The single factual allegation concerning Moran is simply that he is "a friend" of the plaintiff's ex-husband. (Compl. at 5.) The Court assumes that the plaintiff's case against Moran is premised on the same alleged failure on the part of MOA to provide her with the pension benefit information she has requested and that she seeks to hold Moran personally liable for this purported failure.

In the instant case, it is unnecessary for us to definitively resolve whether and under what circumstances a corporate officer may be held liable for his company's failure to comply with ERISA.[6] We have found nothing deficient in MOA's responses to the plaintiff.

We are nevertheless compelled to note the total absence of any substantive factual allegations against Moran. The plaintiff has not alleged a single act of wrongdoing on his part, nor has she alleged that he had any part in the events for which she

has sought to hold MOA liable. The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, and *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), require more than this to survive a motion to dismiss. Although a plaintiff need not produce "detailed factual allegations" in a complaint, there must be more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A complaint cannot survive merely by including "naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotations omitted).

Accordingly, we grant the defendants' motion to dismiss the claims against Moran pursuant to Rule 12(b)(6).

### *CONCLUSION*

For the foregoing reasons, MOA is granted summary judgment with respect to the plaintiff's claims that that the company has (1) failed to comply with its disclosure obligations in violation of 29 U.S.C. § 1132 and (2) breached its fiduciary duties in violation of 29 U.S.C. § 1104. We dismiss the plaintiff's claim (pursuant to Rule 12(b)(6)) that MOA has violated the criminal provisions of ERISA. The plaintiff's complaint is dismissed in its entirety (pursuant to Rule 12(b)(6)) as against the defendant Moran.

We close by noting that although we appreciate the plaintiff's zeal, there is in fact no legal basis for the plaintiff's lawsuit. We again express our appreciation for the defense counsel's efforts to assist the plaintiff even in the absence of an obligation to do so, and we are disappointed that the plaintiff pursued this case even after receiving so much information from

---

**6.** Under limited and extremely rare circumstances, individuals have been held liable for their companies' failure to comply with

ERISA obligations. *See, e.g., Lowen v. Tower Asset Mgmt., Inc.,* 829 F.2d 1209, 1220–21 (2d Cir.1987).

the defendants on a voluntary basis. We suggest that the plaintiff proceed from here, first, by contacting the relevant United Way Affiliates directly concerning the information (if any) that she still seeks and, if necessary, by enlisting the assistance (as she has previously done) of the Department of Labor. In addition, now that the plaintiff has a QDRO, resort to the matrimonial court for enforcement of its orders would appear to be an additional forum.

The Clerk of the Court is respectfully directed to terminate the defendants' motion (docket no. 9) and to close this case.